### HAWAIIAN PINEAPPLE CO., Limited, v. SAITO et al.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1921.)

No. 3374.

**1. Appeal and error ⬅84(4)—Decree of reversal by Supreme Court of Hawaii held appealable.**

A decree of the Supreme Court of Hawaii, reversing a decree of the circuit court and remanding the cause, with directions to dismiss the bill, *held* appealable to the Circuit Court of Appeals.

**2. Injunction ⬅59(1)—Violation of contract for personalty may be enjoined, if legal remedy is not adequate.**

Equity has jurisdiction to enjoin violation of a contract relating to personalty, where special circumstances are alleged showing that the remedy at law is not adequate.

**3. Sales ⬅68—Contract for sale of pineapples to be grown construed; "present holdings."**

A contract for the purchase by complainant of all the merchantable pineapples that might be grown by defendant during the next four years "on his present holdings at Leilahua or elsewhere on the island of Oahu or that he may own or control on the island of Oahu," made on a printed blank prepared by complainant, leaving only the word "Leilahua" to be inserted, *held* to obligate defendant to sell only such pineapples as might be grown by him on his "present holdings," whether at Leilahua or elsewhere on the island, and such as he might then own or control on the island, and not to cover pineapples grown by him on other holdings subsequently acquired.

Appeal from the Supreme Court of the Territory of Hawaii.

Suit in equity by the Hawaiian Pineapple Company, Limited, against Masamari Saito and Libby, McNeill & Libby, of Honolulu, Limited. From a decree of the Supreme Court of Hawaii, reversing a decree of the circuit court in its favor, complainant appeals. Affirmed.

Peters & Smith and Frear, Prosser, Anderson & Marx, all of Honolulu, T. H., and Edward Hohfeld, of San Francisco, Cal., for appellant.

Thompson, Cathcart & Lewis and Barry S. Ulrich, all of Honolulu, T. H., and Pillsbury, Madison & Sutro and L. G. McArthur, all of San Francisco, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GILBERT, Circuit Judge. On May 18, 1916, the appellant was engaged in the business of canning pineapples in the Hawaiian Islands. On that date a contract was entered into between the appellant and the appellee Saito for the sale of pineapples by Saito to the appellant for a period of four years therefrom. At that time Saito was raising pineapples upon 150 acres of land on the island of Oahu, which he held under leases. Later in the same year on July 1 and August 1, Saito acquired two other leasehold interests, upon which he grew and produced pineapples. All the pineapples which he produced, both upon his prior and subsequently acquired holdings, were sold and delivered to the appellant until about the end of January, 1918, when he ceased to deliver to the appellant the pineapples grown upon the subsequently acquired leaseholds, and soon thereafter he entered into a contract by which he agreed to sell and deliver those pineapples to the appellee Libby, McNeill & Libby. It was to enjoin such sale and delivery to Libby, McNeill & Libby that the present suit was brought by the appellant in the circuit court of Hawaii. That court sustained the appellant's contention and enjoined the further sale of such pineapples to Libby, McNeill & Libby. On appeal to the Supreme Court the decree of the circuit court was reversed, and the cause was remanded with instructions to dismiss the bill. From the decree of the Supreme Court the present appeal is taken.

[1] The appellee raises the question of the jurisdiction of this court to entertain the appeal, and cites Rumsey v. New York Life Ins. Co. (C. C. A.) 267 Fed. 554, in which we held that a decree of the Supreme Court of Hawaii, remanding a case for such further action compatible with the decision as might be necessary, was not a final decree, and was not appealable. In the present case the Supreme Court ordered that the decree appealed from be vacated and set aside, and that the permanent injunction be dissolved, and that the lower court be instructed to dismiss the complainant's bill of complaint filed therein, "and to take such further and other proceeding prior or subsequent to the dismissal of the bill as may be consistent with the opinion of this court in said cause." We think the decree was final and appealable. There was no proceeding which the circuit court could take prior to the dismissal of the bill, and after the dismissal of the bill it is equally plain that no proceeding could be had pertaining to the merits of the controversy.

[2] The appellee brings in question also, the jurisdiction of equity to entertain the cause of suit, contending that there was a complete and adequate remedy at law. It is true that equity will not decree the specific performance of a contract which relates to personalty in a case where compensation in damages furnishes a complete and satisfactory remedy. But the bill sets forth special circumstances, the allegations of which it is unnecessary here to repeat, which show that there was no adequate remedy at law, and we think the case comes clearly within the principles announced in Curtice Bros. Co. v. Catts, 72 N. J. Eq. 831, 66 Atl. 935, Gloucester, etc., Co. v. Russia Cement Co., 154 Mass. 92, 27 N. E. 1005, 12 L. R. A. 563, 26 Am. St. Rep. 214, Vail v. Osburn, 174 Pa. 580, 34 Atl. 315, White Marble Lime Co. v.

Consolidated Lumber Co., 205 Mich. 634, 172 N. W. 603, and Mutual Oil Co. v. Hills, 248 Fed. 257; 160 C. C. A. 335.

[3] The provisions of the contract which are pertinent to the controversy are the following:

"The Pineapple Company agrees that during the term of four years beginning May 1, 1916, and ending April 30, 1920, it will handle and buy under the conditions as hereinafter detailed, and with such exceptions as are hereinafter stated, all the merchantable smooth cayenne pineapples that may be grown by the planter on his present holdings at Leilahua or elsewhere on the island of Oahu, or that he may own or control on the island of Oahu.

"The planter agrees that he will deliver to the Pineapple Company, under the terms and conditions and with the exceptions hereinafter contained, all the merchantable smooth cayenne pineapples that he may grow at Leilahua or elsewhere on the island of Oahu, or that he may own or control on the island of Oahu, during the term stated."

"It is mutually agreed that the Pineapple Company will furnish f. o. b. railroad cars at Leilahua, Oahu, lug boxes for the delivery of the fruit, and that the planter will deliver said fruit f. o. b. railroad cars at Leilahua, Oahu, in said lug boxes, and that said merchantable pineapples will be delivered in such condition of ripeness as may from time to time be required or designated by the said Pineapple Company."

It is the contention of the appellant that Saito was obligated to sell, not only the pineapples which he grew on the land which he had at the time when the contract was made, but also all that he might grow upon any subsequently acquired lands during the term of the contract. The appellees, on the other hand, contend that the contract required Saito to sell and deliver only the pineapples which he might grow during the period of the contract on the lands which he had at the date of the contract. The appellant draws particular attention to the words "elsewhere on the island of Oahu," as indicating that the contract was to cover pineapples grown on lands other than Saito's "present holdings at Leilahua," and contends that the words "that he may own or control on the island of Oahu" import futurity into the obligations, and indicate that the contract referred to not only the then holdings of Saito, but to holdings which he might afterwards acquire, and it is argued that the words "present holdings" may be added to the word "Leilahua" without changing the meaning or scope of Saito's obligations, and that the sentence should read:

"Pineapples he may grow at Leilahua on his present holdings or [which he may grow] elsewhere on the island of Oahu, or pineapples that he may own or control on the island of Oahu during the term stated."

At the time when the contract was made the appellant was engaged in raising pineapples upon about 6,000 acres of its own land, and it agreed, under contracts made in the early months of that year, to purchase from various independent growers the product of about 1,000 acres in addition to its own. The contracts with the independent growers were made on printed forms prepared by the appellant, and the only blanks left to be filled in the paragraphs of the contract which have been quoted above were blanks for the names of the places where the holdings were situated, so that in Saito's contract the only blanks were the blanks where the word "Leilahua" was subsequently

inserted. The words "or elsewhere on the island of Oahu, or that he may own or control on the island of Oahu," were in the printed form of all such contracts, and they evidently were not employed with any special view to the situation of Saito as a pineapple grower. The contract, it may be conceded, is not free from ambiguity. But the ambiguity is of the appellant's own creation. The appellant prepared the printed forms of the contract, with blanks thereafter to be filled in, and took them to Saito to obtain his signature thereto. Upon well-settled principles, the language of the contract is to be construed most strongly against the appellant.

The first paragraph above quoted expressed the appellant's undertaking. Its most reasonable construction is that it limited the obligation of the appellant to buy only the pineapples to be produced by Saito on the holdings which he then had at Leilahua or elsewhere on the island of Oahu, or pineapples that he then owned or controlled, and that nothing but Saito's "present holdings" were contemplated. The purpose of the words "or that he may own or control on the island of Oahu" seems to have been to forestall the contingency that Saito might not himself grow pineapples on his "present holdings," but might let to others the right to raise them on shares. It is to be observed that nowhere in the contract did Saito obligate himself to grow any pineapples on his holdings or elsewhere. The contract left him free to transfer his holdings or to sublet the same. It is to be observed, also, that at the time when the contract was made, Saito had been for several years a pineapple planter, and there is nothing in the record to show that then, or at any time before or after that date, he was a pineapple broker, or engaged in the business of buying and selling pineapples; and the reasonable construction of Saito's undertaking, in view of the circumstances and the terms of the contract, is, we think, that Saito agreed to sell and deliver pineapples that might be grown by him on his "present holdings" at Leilahua or on his present holdings elsewhere on the island of Oahu, and pineapples that he then might own or control on his present holdings at Leilahua or on his present holdings elsewhere on the island of Oahu.

The appellant contends that a contemporaneous and mutual construction of the contract is found in the fact that Saito up to the end of January sold and delivered to the appellant, not only the pineapples which he produced on his holdings which he had at the time of making the contract, but the pineapples produced on one of the holdings which he thereafter acquired. But to this it is to be said, first, that the pineapples so produced on said subsequently acquired holding were delivered with the others, so far as the evidence shows, without any express understanding between the parties, or discussion as to the rights of the parties; and, second, that Saito had on August 10, 1916, borrowed from the appellant $6,000, and to secure the same executed a mortgage on all of his holdings, including those which he acquired after the date of the contract, and the money which became payable to him for pineapples produced on all of his holdings was applied to the satisfaction of the note and mortgage, which was finally paid on September 10, 1917, and that after that date the pineapples produced on his

after-acquired holdings, which Saito sold and delivered to the appellant, were only the remnant of the 1917 crop on a 20-acre tract.

Of greater value, as showing contemporaneous construction, is the fact that after Saito's signature to the contract had been obtained, and before it was signed by the appellant, there was written thereon by one of the representatives of the appellant, below the place for the signatures:

"Approximately 150 acres. Approximately 1,500 tons (class B 200 tons)."

Thereby the appellant placed a construction upon its agreement, and indicated what the contract entitled it to receive from Saito. The words were written, not only on the copy which the appellant retained, but also upon that which it gave to Saito.

A provision of the contract which throws light on its meaning is that which requires Saito to deliver "said fruit f. o. b. railroad cars at Leilahua, Oahu." It shows that in the contemplation of the parties all pineapples produced by Saito were to be shipped at Leilahua, an obligation that might become wholly incapable of performance as to pineapples raised elsewhere on the island of Oahu.

Another fact to be noted is that, so far as the evidence goes, neither of the parties to the contract at the time when it was entered into contemplated that Saito would increase his holdings of land, or produce pineapples in any greater quantity than those which he was then producing. It would be unreasonable to suppose that the appellant intended to bind itself to take at a specified price all pineapples which Saito might within the coming four years produce or control on the island of Oahu. If such had been its intention, it is reasonable to assume that the appellant would have expressed the same without ambiguity in the contract.

The decree is affirmed.